UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE MATHIAS, | ) | CASE NO. 5:16CV2082 |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], | ) | |
| ACTING COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Defendant. | ) | |

Plaintiff Julie Mathias ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on December 11, 2016, Plaintiff asserts that the administrative law judge ("ALJ") failed to state a valid reason for rejecting the opinion of her treating physician. ECF Dkt. #15 at 11-20. Defendant filed a response brief on February 17, 2017. ECF Dkt. #18. On March 1, 2017, Plaintiff filed a reply brief. ECF Dkt. #19.

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case for an evaluation of the opinion of Plaintiff's treating physician in accordance with the treating physician rule.

## I. PROCEDURAL HISTORY

Plaintiff filed her application for SSI in October 2013. ECF Dkt. #12 ("Tr.") at 172.[2] In her application, Plaintiff alleged disability beginning on February 18, 2012. *Id.* The claim was denied initially and upon reconsideration. *Id.* at 112-19. Following the denial, Plaintiff

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

requested a hearing before an ALJ, which was held on August 17, 2015. *Id.* at 35. On September 1, 2015, the ALJ denied Plaintiff's application for SSI. *Id.* at 16. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the decision issued by the ALJ on September 1, 2015, stands as the final decision.

On August 19, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on December 11, 2016. ECF Dkt. #15. Defendant filed a response brief on February 17, 2017. ECF Dkt. #18. On March 1, 2017, Plaintiff filed a reply brief. ECF Dkt. #19.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision issued on September 1, 2015, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 21, 2013, the date of her application for SSI. Tr. at 21. Continuing, the ALJ determined that Plaintiff had the following severe impairments: multiple sclerosis ("MS"); cervical degenerative disc disease; contraction of the visual field in better eye; depression; post-traumatic stress disorder; panic disorder; and alcohol abuse. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After consideration of the record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except she: could not climb ladders, ropes, or scaffolds; must avoid workplace hazards, such as unprotected heights and dangerous moving machinery; could not perform commercial driving; must avoid concentrated exposure to temperature extremes of hot and cold; could not work with vibrating hand tools; was limited to simple, routine tasks that did not involve arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others; could not perform rate work or assembly line work; and could use frequent depth perception. Tr. at 23-24.

When discussing her RFC, the ALJ addressed the opinion of Plaintiff's treating physician, Timothy Carrabine, M.D. *See* Tr. at 27-28. Dr. Carrabine limited Plaintiff to: lifting

less than five pounds for one-third of the day; and standing/walking for less than one hour total during the day, and less than twenty minutes at a time. *Id.* at 27. Continuing, the ALJ stated that Dr. Carrabine indicated that Plaintiff would need to take an unscheduled break every hour, but did not need to use a cane. *Id.* The ALJ indicated that Dr. Carrabine limited Plaintiff to performing manipulations and reaching less than ten percent of the day. Additionally, the ALJ stated that Dr. Carradine opined that Plaintiff would be off task more then twenty-five percent of the day and would miss more than four days of work per month. *Id.*

The ALJ then indicated that little weight was afforded to Dr. Carrabine's opinion as to Plaintiff's physical limitations as the opinion was not supported by the conservative treatment, a lack of multiple hospitalizations, the MRI results, and Plaintiff's activities of daily living. Tr. at 27. Continuing, the ALJ stated that Plaintiff's activities of daily living did not support her allegations regarding her MS, as she had: lived with her eighty-one -year-old grandmother since 2013 and provided "a lot of care for her grandmother"; went to the grocery store; washed the laundry; talked with her friends on the phone; read and watched television; prepared simple meals; performed light housework; shopped for personal items; and socialized with friends a few times a week. *Id.* Additionally, the ALJ noted that Plaintiff did not drive, but this was because her license had lapsed rather than on the order of any of her doctors. *Id.*

The ALJ also addressed the form Dr. Carrabine completed regarding Plaintiff's mental limitations. Tr. at 28. According to the ALJ, Dr. Carrabine opined that Plaintiff was essentially unable to perform in many areas, including: remembering work procedures; understanding detailed instructions; maintaining attention and concentration; performing activities within a schedule; working in coordination or in proximity to others; accepting instructions and criticism from supervisors; responding appropriately to changes; traveling to unfamiliar places; and setting realistic goals. *Id.* The ALJ stated that Dr. Carrabine opined that Plaintiff would miss work more than four days a month, would need four unscheduled breaks a day, and would be off task twenty percent of the day. *Id.* After describing Dr. Carrabine's opinion, the ALJ stated that the opinion was being afforded no weight since Dr. Carrabine was not a mental health professional and did not treat Plaintiff's mental health problems. *Id.* Continuing, the ALJ stated

-3-

that while Dr. Carrabine may have had some insight on Plaintiff's cognitive deficits due to her MS, his extreme opinion was inconsistent with her conservative treatment, activities of daily living, and the medical evidence of record. *Id.* The ALJ concluded his discussion of Dr. Carrabine's opinion regarding Plaintiff's mental limitations by stating, "[a]n individual with such drastic mental limits would presumably not be able to care for an 81-year-old woman." *Id.*

Next, the ALJ indicated that Plaintiff had no past relevant work, was a younger individual on the date her application for SSI was filed, had at least a high school education, and was able to communicate in English. Tr. at 29. The ALJ stated that the transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* After making the above finding, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since October 21, 2013, the date her application for SSI was filed. *Id.* at 30.

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity

>must be considered to determine if other work can be performed (20
>C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.     STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V.     ANALYSIS

Plaintiff asserts that the ALJ failed to state valid reasons for rejecting the opinion of Plaintiff's treating physician, Dr. Carrabine. ECF Dkt. #15 at 11-20. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified

-6-

based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Specifically, Plaintiff takes issue with the reasons the ALJ provided for assigning little weight to Dr. Carrabine's opinion, namely, that the opinion was not supported by the conservative treatment, a lack of multiple hospitalizations, the MRI results, and Plaintiff's activities of daily living.[3] ECF Dkt. #15 at 13. Plaintiff first asserts that her treatment was not conservative, indicating that she was originally treated with Copaxone, a drug used to prevent MS relapses, Baclofen, a muscle relaxer and antispastic agent, and Vicodin. *Id.* Continuing, Plaintiff states that as time progressed, Dr. Carrabine also introduced Tecfidera, a "new disease modifying therapy in the form of an oral antioxidant," but cautioned that all the side effects of the drug may not yet be known. *Id.* (citing Tr. at 312). Plaintiff asserts that this is not conservative treatment, as Dr. Carrabine, a specialist in MS, adjusted Plaintiff's medication over time, prescribed new medications with potentially unknown side effects, and monitored the effectiveness of said treatment. *Id.* at 13-14.

Next, Plaintiff asserts that an MRI taken in July 2013 revealed that foci of scattered flair hyperintensity were present, including involvement of the corpus callosum, most of which were parallel to white matter tracks. ECF Dkt. #15 at 14 (citing Tr. at 282). Plaintiff avers that these findings were consistent with a clinical history of MS. *Id.* (citing Tr. at 282). Additionally,

---

[3]Dr. Carrabine provided opinions as to Plaintiff's physical and mental limitations. Tr. at 324, 362. The chief concern for both parties is the ALJ's treatment of Dr. Carrabine's opinion regarding Plaintiff's physical limitations. *See* ECF Dkt. #15, ECF Dkt. #18. As such, the Court's reference to Dr. Carrabine's opinion in this section of the instant Memorandum Opinion and Order involves only Dr. Carrabine's opinion as to Plaintiff's physical limitations, unless otherwise noted.

Plaintiff states that a CT of Plaintiff's brain revealed questionable four-millimeter white matter hypodensity in her left frontal lobe that could be related to age-indeterminable ischemic changes prior to her known history of MS. *Id.* (citing Tr. at 281). Plaintiff contends that the MRI objectively demonstrated that she had MS and that the ALJ's rejection of the Dr. Carrabine's opinion on this basis was without merit. *Id.*

Continuing, Plaintiff addresses the ALJ's treatment of her activities of daily living, namely: going to the grocery store, talking to friends on the phone, watching television, preparing simple meals, performing light housework, and helping care for her grandmother. ECF Dkt. #15 at 15. Plaintiff asserts that, despite the ALJ's findings, a review of the record shows that the activities of daily living cited by the ALJ when discounting Dr. Carrabine's opinion were not only minimal, but also caused Plaintiff to experience problems. For example, Plaintiff indicates that she needed others to drive her to the store and help with laundry. *Id.* Plaintiff states that the fact that she talked on the phone with friends is irrelevant to Dr. Carrabine's assessment. *Id.* Further, Plaintiff indicates that it is unclear how reading and watching television undermined Dr. Carrabine's assessment. *Id.*

Additionally, Plaintiff asserts that caring for her grandmother did not include much activity, and thus the ALJ improperly stated that Plaintiff "does provide a lot of care for her grandmother" when finding mild restrictions in her activities of daily living. ECF Dkt. #15 at 15. Plaintiff asserts that there is no evidence in the record establishing that the activities involved in caring for her grandmother rose to significant levels, and indicates that she testified that she tried to help her grandmother as much as she could. *Id.* at 16 (citing Tr. at 49). Continuing, Plaintiff states that she testified that she did not cook for her grandmother and that her grandmother drove her to the grocery store. *Id.* Plaintiff avers that these activities are the extent to which Plaintiff cared for her grandmother. *Id.* Additionally, Plaintiff asserts that it has been long held that minor activities of daily living are insufficient to establish the ability to engage in substantial gainful activity. *Id.* (internal citations omitted).

Plaintiff also avers that the ALJ misstates her testimony. ECF Dkt. #15 at 17. As an example, Plaintiff indicates that the ALJ noted that she testified that she was able to read and

watch television, despite her testimony that she did not read. *Id.* (citing Tr. at 26, 50). Further, Plaintiff asserts that Dr. Carrabine's medical source statement was supported by the treatment notes and objective findings of record, stating that throughout the record the treatment notes consistently identify Plaintiff's problems associated with: reflex abnormality; diminished grip strength bilaterally; increased motor tone in the lower extremities; ataxia bilaterally; slow gait consistent with ataxia; and toe walking and tandem gait due to balance difficulties. *Id.* at 18 (citing Tr. at 310-11, 319, 328, 338, 358). Plaintiff contends that these findings are not benign, but are instead clinically significant and severe. *Id.* Additionally, Plaintiff states that the fact that her primary physician found her condition to be stable does not mean the condition was not severe. *Id.* (citing Tr. at 321). Plaintiff contends that Dr. Carrabine's records indicate ongoing, severe, neurologic findings that supported his opinion regarding her limitations. *Id.* at 19. For these reasons, Plaintiff claims that the ALJ erroneously rejected Dr. Carrabine's opinion in violation of the treating physician rule. *Id.*

Defendant argues that the ALJ reasonably assigned little weight to Dr. Carrabine's opinion. ECF Dkt. #18 at 10-13. Continuing, Defendant states that the ALJ provided "good reasons" for discounting Dr. Carrabine's opinion, namely that Plaintiff: received emergency inpatient care for her MS on only one occasion during the relevant period; the sole hospitalization was Plaintiff's only documented occurrence of a MS relapse; and, other than the single hospitalization, the treatment notes did not reflect the she had any other recurrence of a MS attack during the relevant period. *Id.* at 11 (citing Tr. at 27, 263-64, 310, 321). Defendant also states that the record does not support Plaintiff's characterization of the prescription of Tecfidera as risky or aggressive treatment. *Id.* at 12. Additionally, Defendant asserts that the record documented a more aggressive treatment modality, and that hospital treatment notes from Plaintiff's single MS relapse occurrence reflect that she was placed on intravenous steroid medication, resulting in rapid improvement. *Id.* Defendant notes that the intravenous steroid treatment illustrates at least one method for aggressively treating acute exacerbation of Plaintiff's symptoms. *Id.*

Next, Defendant avers that the ALJ also considered inconsistencies between Dr. Carrabine's opinion and the objective medical evidence in the record. ECF Dkt. #18 at 12. Specifically, Defendant states that the ALJ relied on the fact that the MRI procedures performed in July 2013 and December 2014 showed no enhancing or diffusion restricting lesions, despite being consistent with a history of MS. *Id.* Defendant also notes that the ALJ found the state agency opinion to be more consistent with the findings of record, and that Plaintiff's primary care physician observed that she had normal physical examinations with no neurological abnormalities other than mild ataxia while walking. *Id.* (citing Tr. at 259-60, 321-22). Based on these reasons, Defendant asserts that Dr. Carrabine's assessment of significant work restrictions was "far out of proportion to the foregoing diagnostic and examination findings," and thus it was reasonable for the ALJ to discount the opinion. *Id.* at 13 (citing Tr. at 324-26).

Finally, Defendant avers that the ALJ took Plaintiff's activities of daily living into account when determining the weight to assign Dr. Carrabine's opinion. ECF Dkt. #18 at 13. Defendant states that the ALJ observed that Plaintiff lived with and helped her eighty-one-year-old grandmother, and reported that she was able to perform some household chores, prepare simple meals, wash laundry, and shop. *Id.* (citing Tr. at 212-213, 287). Based on these assertions, Defendant contends that Plaintiff was more functional than Dr. Carrabine opined. *Id.* Defendant also claims that, even should the Court find that Plaintiff's activities of daily living did not conflict with Dr. Carrabine's opinion, any error in this regard was harmless as the ALJ provided other valid reasons for discounting the opinion. *Id.*

The ALJ failed to state "good reasons" for rejecting the opinion of Dr. Carrabine, Plaintiff's treating physician. After describing the physical limitations contained in Dr. Carrabine's opinion, as stated above, the ALJ provided the following explanation as to why little weight was afforded to the opinion:

> [Dr. Carrabine's opinion] is not supported by the conservative treatment, the one hospitalization, the MRIs and [Plaintiff's] activities of daily living. [Plaintiff's] activities of daily living are unsupportive of her allegations regarding her [MS]. [Plaintiff] has lived with her 81-year-old grandmother since 2013. She does provide a lot of care for her grandmother. She goes to the grocery store. She does the laundry. She talks with her friends on the phone. She reads and watches television (testimony). She can prepare simple meals and light housework

-10-

> (Exhibit B3E/4). While she does not drive (Exhibit B3E/5), this is because her license has lapsed; no doctor has told her to stop driving (testimony). She goes shopping for groceries and personal items (Exhibit B3E/5). She socializes with friends a few times a week (Exhibit B3E/6).

Tr. at 27. The undersigned agrees with Defendant that Plaintiff's treatment was fairly conservative even if she was treated with Tecfidera, a drug for which the side effects may not have been entirely known, as her treatment essentially consisted of a medication regime. However, the ALJ's reliance on a sole instance of hospitalization is questionable as there is no further explanation provided in the decision as to why this fact conflicts with Dr. Carrabine's opinion. Additionally, MS is not necessarily the type of disease that would result in frequent hospitalizations.[4] The ALJ did not provide an explanation as to how the MRI results contradicted Dr. Carrabine's opinion. The Court recognizes that the ALJ mentions the MRI results when discussing Plaintiff's RFC, however, the July 2013 MRI revealed a new lesion on her brainstem, and the January 2014 MRI showed several small abnormalities of the thoracic spine, consistent with MS. *See* Tr. at 25. While the December 2014 MRI displayed results unchanged from the July 2013 MRI, it is unclear from the ALJ's decision how the results from the MRI studies contributed to the assignment of little weight to Dr. Carrabine's opinion. *See id.*

More importantly, the ALJ's discussion of Plaintiff's activities of daily living, which makes up the majority of the explanation as to why Dr. Carrabine's opinion was afforded little weight, mischaracterizes portions of Plaintiff's testimony and her statements of record. The ALJ began by citing Plaintiff's testimony to indicate that "[s]he does provide a lot of care for her grandmother." Tr. at 27. According to the ALJ, Plaintiff went to the grocery store, washed the laundry, talked with friends on the phone, read, and watched television. *Id.* To support each of these findings, the ALJ cited Plaintiff's hearing testimony. *See* Tr. at 27. A review of Plaintiff's hearing testimony reveals that she actually stated that her grandmother, mom, or daughter drove her to the grocery store. *Id.* at 50. Additionally, Plaintiff testified that she did not cook for her grandmother, as her grandmother was a good cook, and that she only used the microwave to

---

[4] *See* Mayo Clinic, Multiple sclerosis: Symptoms and causes, http://www.mayoclinic.org/diseases-conditions/multiple-sclerosis/symptoms-causes/dxc-20131884 (last visited August 30, 2017).

-11-

prepare food. *Id*. at 50. Regarding washing the laundry, Plaintiff testified that she would do the laundry if someone helped her carry the laundry basket down the stairs, and that her grandmother usually carried the basket for her. *Id.* at 49-50. Insofar as the ALJ indicated that Plaintiff talked with friends on the phone, the Court does not find this to be particularly instructive as to Plaintiff's physical limitations. The same can be said of Plaintiff's ability to read and watch television. Moreover, the ALJ cited Plaintiff's testimony when indicating that she read, however, Plaintiff actually testified that she did not read. *Id.* at 50.

Additionally, the ALJ cited a Function Report prepared in November 2013 when stating that Plaintiff went shopping for groceries and personal items, but omitted that Plaintiff indicated that she shopped with her family. Tr. at 24, 214. The ALJ also stated, "[Plaintiff] socializes with friends a few times a week," citing the same November 2013 Function Report. *Id.* at 24. The Function Report actually states that Plaintiff socialized with friends one to two times a week "with minimal participation" and indicated that she "need[ed] transportation and some assistance." *Id.* at 215.

If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. SSR 96-2p. Here, the ALJ indicated that Dr. Carrabine's opinion was afforded little weight as it was not supported by the conservative treatment, a lack of multiple hospitalizations, the MRI results, and Plaintiff's activities of daily living. The ALJ has failed to provide "good reasons" for discounting Dr. Carrabine's opinion. While the Court agrees that Plaintiff's treatment was fairly conservative, the ALJ failed to explain how the lack of multiple hospitalizations of a claimant with MS and the MRI results undermine Dr. Carrabine's opinion. Moreover, the ALJ selectively cited Plaintiff's testimony and the medical records when finding that her activities of daily living did not support Dr. Carrabine's opinion. A review of the hearing testimony and medical records reveals that the ALJ's discussion of Plaintiff's activities of daily living did not accurately portray her testimony or the medical

evidence. For these reasons, this matter is remanded to the ALJ to evaluate Dr. Carrabine's opinion in accordance with the treating physician rule.[5]

## VI. CONCLUSION

For the foregoing reasons, Court REVERSES the ALJ's decision and REMANDS Plaintiff's case for an evaluation of the opinion of Plaintiff's treating physician in accordance with the treating physician rule.

Date: August 31, 2017            */s/George J. Limbert*
                                                             GEORGE J. LIMBERT
                                                             UNITED STATES MAGISTRATE JUDGE

---

[5]Plaintiff briefly discusses Dr. Carrabine's opinion as to her mental limitations, indicating that the ALJ gave little weight to Dr. Carrabine's opinion of her mental limitations by stating, "[a]n individual with such drastic mental limits would presumably not be able to care for an 81-year-old woman." ECF Dkt. #15 at 15-16. Defendant does not address the ALJ's treatment of Dr. Carrabine's opinion as to Plaintiff's mental limitations. *See* ECF Dkt. #18. When finding the Dr. Carrabine's opinion as to Plaintiff mental limitations deserved no weight (Plaintiff incorrectly stated little weight was afforded to Carrabine's opinion regarding her mental limitations), the ALJ included her activities of daily living as a reason for the finding. This case is being remanded due, in part, to the ALJ's deficient analysis of Plaintiff's activities of daily living. The analysis performed on remand may impact the findings regarding Plaintiff's activities of daily living and/or physical limitations. According, on remand the ALJ must also consider whether Dr. Carrabine's opinion as to Plaintiff's mental limitations deserves to be afforded any weight and provide "good reasons" if the opinion is afforded less than controlling weight. *See* SSR 96-2p.